KNABUSH v. COMMON COUNCIL OF VILLAGE OF BRITTON.

1. INTOXICATING LIQUORS—LICENSE BOND—MANDAMUS—EVIDENCE.
In proceedings for mandamus to compel a village council to accept a liquor bond tendered by a saloonkeeper, inquiry whether the members of the council would accept the bond of a surety company was properly excluded.

2. SAME—EVIDENCE—CROSS-EXAMINATION — EXPERT AND OPINION EVIDENCE.
Where a witness as to the value of real estate is asked on cross-examination if he would take the price named by him for his own farm, similarly situated, it is not reversible error to exclude the testimony.

3. SAME—SUFFICIENCY OF SURETY—MANDAMUS.
On mandamus to compel the common council of a village to accept a liquor bond, the sufficiency of the surety is not in issue, only the good faith of the council in making the rejection.

4. SAME—MANDAMUS.
Where the evidence tended to show that the surety on the saloonkeeper's bond obtained certain property colorably in order to justify as a bondsman, it was not error to refuse a writ of mandamus to compel the acceptance of the bond by the village council.

Certiorari to Lenawee; O'Mealey, J.  Submitted October 5, 1909.  (Calendar No. 23,527.)  Decided November 5, 1909.

Mandamus by Louis Knabush to compel the common council of the village of Britton to approve a liquor bond. An order denying the writ is reviewed by relator on writ of certiorari.  Affirmed.

*Smith, Baldwin & Alexander*, for relator.

*Bird & Sampson*, for respondent.

MOORE, J.  May 3, 1909, the relator tendered to the village council of the village of Britton a bond as a retail liquor dealer, with E. G. Price and George Allen as sureties.  The council declined to approve the bond.  A writ of mandamus was sued out of the circuit court for the purpose of compelling the council to approve the bond.  A hearing was had.  Many witnesses testified. The court declined to compel the council to approve the bond, which action it is sought to review by the writ of certiorari.  The village board made a sworn return to the petition, insisting that it had acted in the utmost good faith.  By consent of counsel in open court the following issues were framed:

(1) Has the common council acted in good faith in rejecting the liquor bond of relator?

(2) Is the surety George Allen worth in real estate situate within the county of Lenawee, the sum of $6,000 over and above all indebtedness, incumbrances, and exemptions from sale on execution?

The court rendered an oral opinion, and later filed a written opinion, the important part of which is as follows:

"The evidence discloses that there was no question in the deliberations of the council as to the sufficiency of the surety Price.  Each of the councilmen of said village, except one, and including the president, testified as a witness upon the hearing, and each emphatically denied that the purpose of the council, or their action as members of it,

had any motive, purpose or object in view in rejecting said bond for the insufficiency of the responsibility of the surety Allen, except to do their duty under the statute as members of the council; that each of said councilmen had known the surety Allen for several years, and they had known him to be a man of limited means and property outside of a farm of 80 acres, valued in the evidence from $50 to $60 per acre, and that said farm was incumbered by a mortgage for $1,000; that said mortgage was originally for $1,500; that said surety lived upon said farm, and in the course of 10 to 12 years had succeeded in reducing said mortgage by making payments thereon in the amount of $500 and the accrued interest from year to year, and that they were informed and understood, at the time of their said action upon said bond, that the surety Allen, being pressed for payment upon said mortgage by the mortgagee, was soliciting a loan for that amount from some of his neighbors to pay and discharge said mortgage as a lien upon his land, and the evidence discloses that they believed that, whether the surety Allen gave a new mortgage to one Ousterhout, from whom he succeeded in effecting a loan, or whether he borrowed the money upon his note, they believed that the debt secured by said mortgage still remained as an outstanding obligation of the surety Allen against him, and thereby reduced his financial responsibility to that extent."

Then follows a review of the testimony, in which the following appears:

"And although the surety Allen was produced as a witness on behalf of the petitioner upon the hearing, and testified that early in the spring of this year, when he was undertaking to secure a loan of $1,000 upon his farm to discharge the old mortgage, he had $2,000 in cash in his home, and that he had $1,000 of it there for three or four years, and the other $1,000 for one or two years, and that he used this money in connection with some he acquired from his auction notes, as the proof discloses, in the purchase of the saloon property in which the petitioner had been carrying on the saloon business for the last year, and yet that question is left upon the unsupported testimony of the surety and witness Allen. * * * This and the fact that no satisfactory evidence was produced at the hearing as to how he accumulated this money and from what source, and from all the evidence in the case, the

building of the house that cost him $2,000, paying off other indebtedness of nearly $1,000 within the last two or three years, and buying this saloon property for $2,500, and paying cash for it, the court discredits the testimony of the witness Allen as to his financial responsibility, and thinks that the council might well, in the exercise of an honest and conscientious judgment, discredit the fact that the purchase of the saloon building was made in good faith, intending on the part of the petitioner and of the surety Allen that it should be a genuine sale and purchase, but rather that it was a fictitious transfer for the express purpose of qualifying Mr. Allen as a surety upon this bond; and from all the testimony in the case, the appearance of the petitioner and the witness Allen upon the stand, and in the consideration of the circumstances and surroundings, and the whole transaction, the court is impressed with the view that, if there is an element of bad faith in this transaction, it exists upon the part of the petitioner and the surety Allen rather than upon the part of the council; and the court finds that the respondent has shown ample cause under the order heretofore issued in this case, and that the council, in their action in rejecting the respondent's bond as detailed in the evidence, acted in the utmost good faith, and that the court's acquaintance with the individual members of the council for many years and their character and standing in the community would cause him to hesitate before believing otherwise."

As before stated, the court refused to issue the writ of mandamus.

The points made by counsel are:

(1) The court erred in refusing to permit inquiry to be made of the members of the council as to whether they would accept a surety company bond.

(2) The court erred in refusing to receive or hear other proper evidence offered by petitioner.

Walter Exelby was called by the council to pass upon the value of the farm of the surety Allen. He owned a farm similarly located near the farm of Mr. Allen. On cross-examination he was asked if he would take the same price, $55 an acre, for his farm. An objection to this question was sustained.

(3) Because the court refused to find that the council arbitrarily refused to accept the bond.

(4) Because the court refused to find that surety Allen was a good, proper, and sufficient surety.

This, as before stated, the court held was not a question to be found by the court; that the only thing to be passed upon was whether the council acted in good faith. We discuss this further on, also.

(5) The court refused to determine the case upon the evidence, but rather upon his personal acquaintance with the members of the council.

(6) The court erred in the rule upon which the case was determined, which was that to find that the members of the council acted in bad faith was, in effect, to "reach a conclusion that they were dishonest men," etc.

Points 1 and 2 may be disposed of by saying the court did not err in its rulings in relation thereto.

Points 3, 4, 5, and 6 may be discussed together. We think counsel is mistaken in the conclusion that the court did not determine the case upon the evidence, but disposed of it upon the theory that if he found the village council did not act in good faith, it was in effect to reach a conclusion that they were dishonest men. We have already quoted enough from the opinion to show that the court was satisfied that the village council acted in good faith in reaching the conclusion that Mr. Allen was not a qualified surety, and that the judge also thought it had not been shown that he was a qualified bondsman. The record discloses that on May 1, 1909, the relator and his wife deeded property, said to be worth $2,500, to Mr. Allen, and he in turn rented it to relator for saloon purposes at $20 a month. The bond was offered to the village council May 3, 1909. It is claimed that the sale from Knabush to Allen was made in good faith and for cash. The testimony of Mr. Knabush and Mr. Allen is so contrary to the experiences of ordinary men that it is not surprising that the village council and the circuit judge did not believe their versions of the transaction. There is nothing to im -

peach the good faith of the village council.   The evidence fully justified the conclusion of the circuit judge that if there was bad faith anywhere, it was upon the part of the relator and the surety Allen, and not upon the part of the village council.

The action of the circuit judge is affirmed.

BLAIR, C. J., and GRANT, McALVAY, and BROOKE, JJ., concurred.